IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SOLAREN RISK MANAGEMENT, LLC, JACK KENNETH BYRD III<br><br>Plaintiffs,<br><br>v.<br><br>BRENT CULBERSON, in his individual and official capacities, MALIAKA BASS, in her individual and official capacities, CARTER LAWRENCE, in his official capacity, BILL LEE, in his official capacity, JESSE GENTRY, in his official capacity, ASHTON BODE, in her official capacity.<br><br>Defendants. | Civil Action File No. |

COMPLAINT

COME NOW Plaintiffs Solaren Risk Management, LLC, ("Solaren") and Jack Kenneth Byrd III ("Byrd") (collectively "Plaintiffs"), by and through their undersigned counsel, and file this Complaint against Defendant Brent Culberson ("Defendant Culberson"), Defendant Maliaka Bass ("Defendant Bass"), Defendant Carter Lawrence ("Defendant Lawrence"), Defendant Bill Lee ("Defendant Lee"), Defendant Jesse Gentry ("Defendant Gentry"), and Defendant Ashton Bode ("Defendant Bode") (collectively, "Defendants").

PARTIES

1. Plaintiff Solaren Risk Management, LLC, is a Limited Liability Company formed in the State of Tennessee.

2. Plaintiff Jack Kenneth Byrd III is the founder and Chief Executive Officer of Solaren Risk Management, LLC.

3. Defendant Brent Culberson serves as the Chief of Staff of the Tennessee Department of Commerce and Insurance; he is sued in his individual and official capacities.

4. Defendant Maliaka Bass serves as the Deputy General Counsel for General Civil of the Tennessee Department of Commerce and Insurance; she is sued in her individual and official capacities.

5. Defendant Carter Lawrence serves as the Commissioner of the Tennessee Department of Commerce and Insurance; he is sued in his official capacity.

6. Defendant Bill Lee serves as the Governor of Tennessee; he is sued in his official capacity.

7. Defendant Jesse Gentry serves as the Chief Counsel of the Tennessee Department of Commerce and Insurance; he is sued in his official capacity.

8. Defendant Ashton Bode serves as the Executive Director, Detection Service Licensing Program; she is sued in her official capacity.

## JURISDICTION AND VENUE

9. Jurisdiction is appropriate under 28 U.S.C. § 1331. Plaintiffs' claims arise "under the Constitution, laws, or treaties of the United States," including the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

10. Venue in this Court is appropriate under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this district.

## FACTS

### A. The Tennessee Private Protective Services Licensing Act

11. The Tennessee Private Protective Services program (the "Program"), created in 1987, regulates Armed and Unarmed Security Guards, Certified Trainers, Contract Security

Companies and Proprietary Security Organizations.

12. As of July 1, 2021, the Program is housed within the Detection Services Licensing Program of the Tennessee Department of Commerce and Insurance ("TDCI").

13. As described on the TDCI website, the "current requirements for the licensure of security guards, certified trainers, contract security companies, and proprietary security organizations can be found in" the Private Protective Services Licensing and Regulatory Act, Tenn. Code Ann. § 62-35-101, et seq. (the "Licensing Act").

14. Specifically, the Licensing Act provides that "it is unlawful for any person to act as a contract security company without having first obtained a license from the commissioner," identifies the qualifications required for the issuance of such licenses, and describes the procedure for obtaining a license and the process for approving or denying licenses. Tenn. Code Ann. § 62-35-104-107.

15. In addition, the Licensing Act generally requires that every private security guard who is subject to the Licensing Act must carry a valid registration card issued by the TDCI.

16. The Licensing Act also generally prohibits a private security guard who is subject to the Licensing Act from wearing any badge, patch, emblem, or uniform element that indicates the individual is a "sworn peace officer" or contains the word "police." Tenn. Code Ann. § 62-35-104-127.

17. At all times relevant to the issues raised in the instant Complaint, the 2024 version of the Licensing Act stated, "This chapter does not apply to" sixteen distinct categories of individuals who are exempt from the Licensing Act. Tenn. Code Ann. § 62-35-103 (12), (13) (2024) (emphasis added) (collectively, the "Licensing Act Exemptions").

18. The categories of individuals exempt from Licensing Act pursuant to the Licensing Act Exemptions include, but are not limited to: (1) a "full-time sworn peace officer receiving compensation for services as a guard, patrol or watchperson under a contract with a private business that is properly licensed by the state; or (2) a "retired peace officer receiving compensation for services as a guard, patrol, or watchperson under a contract with a private business that is properly licensed by the state" subject to certain conditions and qualifications. Tenn. Code Ann. § 62-35-103 (12), (13) (2024).

19. The phrase "sworn peace officer" is defined in the Licensing Act as "any individual who derives plenary or special law enforcement powers, such as the power of arrest, from, and is an employee of, a federal, state, or local governmental agency or instrumentality." Tenn. Code Ann. § 62-35-102(23).

20. Other sections of the Tennessee Code refer to sheriffs and deputies as "conservators of the peace" and impose on those individuals "the duty to suppress . . . breaches of the peace, detect and prevent crime, arrest persons lawfully, execute process, and patrol the roads of the county" as well as to "ferret out crimes, secure evidence of crimes, and apprehend and arrest criminals." *See* Tenn. Code Ann. §§ 8-8-213 and 38-3-102.

21. Similarly, Title 39 of the Tennessee Code, the general provisions applicable to criminal offenses, defines "law enforcement officer" as including both "a sheriff" and "sheriff's deputy." Tenn. Code Ann. § 39-11-106(a)(24).

22. The phrase "retired peace officer" is not defined in the Licensing Act. *See* Tenn. Code Ann. § 62-35-102.

**B.     The Tennessee POST Commission**

23. Prior to, and separate from the Licensing Act, the Tennessee Legislature

established the Peace Officer Standards Training ("POST") Commission in 1981 to regulate, among other things involving law enforcement officers, the employment and training of police officers. Tenn. Code Ann. § 38-8-102(a); § 38-8-104 (describing the powers and duties of the POST Commission).

24.     The POST Commission regulations implemented pursuant to Tenn. Code Ann. § 38-8-104(c), define "law enforcement officer" as "any person employed by any municipality or political subdivision of the State of Tennessee whose primary responsibility is the prevention and detection of crime, and the apprehension of offenders . . . ." Tenn. Comp. R. & Regs. 1110-0l-.01(18)(a) (emphasis added).

25.     Any individual employed as a law enforcement officer by a state or local governmental entity must satisfy minimum qualifications, complete an approved course of basic training, and maintain certification in good standing with the POST Commission. See, e.g., Tenn. Code Ann. §§ 38-8-106, 38-8-107.

26.     The Tennessee General Assembly has demonstrated that when it intends to limit a statutory provision to POST-certified law enforcement officers, it does so explicitly. *See* Tenn. Code Ann. § 38-3-113(b) which specifically refers to a "POST-certified law enforcement officer."

27.     The Licensing Act does not contain any reference to the POST Commission or to "POST-certified law enforcement" officers.

28.     Rather, the Licensing Act Exemptions apply to any "full-time sworn peace officer" or "retired peace officer" providing private security services.

29.     POST Certification is not a requirement under the Licensing Act, and any interpretation of the Licensing Act purporting to limit application of the Licensing Act Exemptions only to POST-certified law enforcement officers inserts additional language into the statute.

## C. WSMV's Thin Blurred Line Investigation

30. Beginning on or about April 27, 2023, WSMV, the NBC-affiliated television station serving Nashville, Tennessee, and the surrounding Middle Tennessee region began reporting on private security companies, through a segment entitled Thin Blurred Line, which examined allegations that private security personnel in Middle Tennessee were presenting themselves as police despite not being POST-certified law enforcement officers. As noted above, the Licensing Act, generally, and the Licensing Act Exemptions, specifically, do not contain any reference to, or requirement of, POST Certification.

31. WSMV's reporting purported to uncover instances in which individuals who were not POST-certified officers allegedly wore police-style badges, patches, vests, and other law-enforcement-style identifiers while working security jobs in the Nashville area.

32. The initial Thin Blurred Line segment described the issue as a "public safety issue," asserting concerns regarding non-state-certified individuals wearing police-style badges and clothing.

33. The April 27, 2023 segment included commentary from an attorney who characterized the issue as a violation of Tennessee law and also quoted TDCI as stating, in general terms, that state laws impose restrictions related to the style of uniforms and badges worn by security guards, including restrictions on the use of the word "police."

34. Subsequent segments of Thin Blurred Line focused primarily on Plaintiffs and discussed various purported investigations related to Solaren's operations.

35. On June 5, 2023, a segment featured a state lawmaker calling for new legislation addressing individuals who appear to be law enforcement officers but are not POST certified.

36. The reports further stated that TDCI had initiated four (4) separate investigations after the airing of the Thin Blurred Line series, including investigations involving Plaintiff Solaren.

37. Since the initial Thin Blurred Line segment aired, no fewer than ninety-six (96) articles, videos, and social media posts mentioning and/or discussing Plaintiffs have been published by the various local news outlets including WSMV, NewsChannel 5, Fox 16, and WKRN.

**D.      The Petition Against Solaren**

38. On June 28, 2024, TDCI initiated an action against Solaren before the Tennessee Detection Services Licensing Program (the "Petition").

39. The Petition asserted 64 counts and sought penalties based on allegations that Solaren employees (without consideration of whether individuals were employees or independent contractors) wore attire identifying them as police officers or law-enforcement officers while working as private security guards, allegedly in violation of the Licensing Act.

40. The Petition also alleges that Solaren has improperly utilized blue and/or red lights on Solaren vehicles in alleged violation of Tenn. Code Ann. §§ 55-9-402(d)(1)(B) and 62-35-127(2)(B).

41. WSMV's Thin Blurred Line series aired a report regarding the Petition on July 2, 2024.

42. Solaren defended a contested case hearing on the Petition from March 26, 2025 to March 28, 2025, in Nashville, Tennessee, before Administrative Judge, Claudia Padfield ("Judge Padfield").

**E.      The Initial Order Imposes a Civil Fine**

43. Judge Padfield entered an Initial Order on September 02, 2025 considering

whether four different categories of alleged Solaren employees (without consideration of whether individuals were employees or independent contractors) improperly wore uniforms and badges in violation of Tenn. Code Ann. § 62-35-127(1)(A)-(C): (a) Davidson County Sheriff's Office ("DCSO") employees; (b) "part-time or terminated law enforcement officers"; (c) "retired peace officers"; and (d) full-time peace officers." Initial Order at 20.

44. In concluding that DCSO employees did not qualify as "peace officers" under the Licensing Act, Judge Padfield did not apply the Licensing Act definition of "sworn peace officer."

45. Instead, Judge Padfield cited the POST Commission's "statutory definition of law enforcement" even though the Licensing Act contains no reference to either the POST Commission or to "law enforcement."

46. In concluding that DCSO employees did not qualify as "peace officers" under the Licensing Act, Judge Padfield cited DCSO testimony that its employees are not "certified to perform the work of criminal law enforcement officers" even though the Licensing Action contains no reference to "law enforcement" generally or to law enforcement certification, specifically.

47. In concluding that DCSO employees did not qualify as "peace officers" under the Licensing Act, Judge Padfield cited the Metropolitan Nashville Charter recognizing the Metropolitan Nashville Police Department as the "principal conservator of the peace" even though the Licensing Act contains no reference to either the Metropolitan Nashville charter or the concept of a "principal conservator of the peace."

48. Judge Padfield found "part time or terminated law enforcement officers" did not qualify for the Licensing Act Exemptions even though the Licensing Act contains no reference to "law enforcement" generally or to "terminated law enforcement officers," specifically.

49. Judge Padfield found retired peace officers and full-time peace officers were

exempt from the Licensing Act pursuant to the Licensing Act Exemptions and dismissed the related counts.

50. The Initial Order further found that TDCI failed to meet its burden of proof as to Solaren's use of vehicles with "police," "law enforcement officer," or equivalent wording and dismissed the related counts.

51. The Initial Order also found that TDCI failed to meet its burden of proof that Plaintiff did not provide a response to a complaint and dismissed the related count.

52. In denying TDCI's request to revoke or suspend Plaintiff's license, Judge Padfield identified the specific actions Plaintiff had taken to address the compliance issues raised in the Petition.

53. Even before TDCI began its investigations, Solaren took a number of steps to ensure future compliance with the Act: Solaren redesigned its badges; hired a Compliance Officer; implemented a bi-annual credential verification program; identified and terminated employees and contractors whose registration credentials under the Act had lapsed; and implemented a fleet vehicle policy.

54. The Initial Order found Solaren liable on 32 of the 64 counts in the Petition and assessed 32 civil penalties of $2,000 each for a total of $64,000. Initial Order at 37.

**F.** ***The Final Order Suspends Solaren's License***

55. Defendant Culberson issued a Final Order on May 16, 2026 (the "Final Order").

56. The Final Order reversed many of the findings of Judge Padfield's Initial Order.

57. The Final Order concludes that any individual wearing a police style uniform or police badge while performing services for Solaren constitutes a violation of the Licensing Act.

58. In reaching this conclusion, the Final Order ignores the multiple categories of

individuals exempt from the Licensing Act in its entirety pursuant to the Licensing Act Exemptions, which provide "[t]his chapter does not apply to" certain individuals. Tenn. Code Ann. § 62-35-103

59. Indeed, the Final Order, despite quoting verbatim multiple sections of the Licensing Act, makes no reference whatsoever to the exemptions identified in Tenn. Code Ann. § 62-35-103 of the Licensing Act.

60. Similarly, the Final Order concludes that any vehicle outfitted with blue and red lights in combination violation of Tenn. Code Ann. § 55-9-414 regardless of who is using the vehicle, such as those individuals who are exempt from the Licensing Act, and where the vehicle is used.

61. In reaching this conclusion, the Final Order ignores the plain language of the Licensing Act Exemptions, ignores the public road condition in Tenn. Code Ann. § 55-9-402(d)(1)(B), and ignores the specific use exemption set forth in Tenn. Code Ann. § 55-9-414(f), which explicitly removes the lights prohibition in certain business circumstances.

62. The Final Order overturned every one of the findings in the Initial Order that TDCI had not carried the burden of proof, assessed a civil penalty of $118,000.00, and suspended Solaren's license for 30 days.

63. As a result of the Final Order and license suspension, Solaren has sustained losses in excess of $50,000,000.00.

## G. Jack Byrd's Public Criticisms of TDCI

64. Prior to the issuance of the Final Order, Jack Byrd appeared in a media interview on a Thin Blurred Line segment concerning the TDCI Petition and hearing. Mr. Byrd also made numerous online posts addressing and commenting on the TDCI and the Petition.

65. Mr. Byrd's media appearance and online statements, which included communications and statements that were sharply critical of the TDCI, its investigative conduct, and the proceedings involving Plaintiff Solaren, constituted protected speech under the First Amendment.

66. Upon information and belief, due to the widespread, repeated, and public nature of Mr. Byrd's speech, Defendants had actual knowledge of Mr. Byrd's speech and expressive conduct.

67. The Final Order and license suspension were motivated by and issued in response to, at least in part, Mr. Byrd's First Amendment protected speech.

## COUNT I
### 42 U.S.C. § 1983 for Violation of Plaintiff's First Amendment Rights

68. The preceding paragraphs are incorporated herein by reference.

69. At all relevant times, Defendant Culberson acted under the color of state law as an official of the TDCI as the Commissioner's Designee on the Final Order. Defendant Culberson reviewed, decided, and/or prepared the Final Order. Additionally, in his official capacity, Defendant Culberson has responsibility for, or authority over, the enforcement and implementation of the Final Order and related regulatory actions.

70. At all relevant times, Defendant Bass acted under the color of state law as an official of the TDCI as the Certifying Attorney on the Final Order. As the certifying attorney on the Final Order, Defendant Bass was responsible for reviewing the Final Order for accuracy and compliance. Additionally, in her official capacity, Defendant Bass has responsibility for, or authority over, the enforcement and implementation of the Final Order and related regulatory actions.

71. At all relevant times, Defendant Lawrence acted under the color of state law as an

official of the TDCI as the Commissioner of the TDCI with the power to oversee Commission investigations. Defendant Lawrence is the chief executive officer of TDCI and is responsible for the administration, oversight, and enforcement of the agency's laws, regulations, and orders, including those relating to licensing, discipline, and regulatory compliance.

72. At all relevant times, Defendant Lee acted under the color of state law as a Governor of Tennessee and with appointment power of the Commissioner. As Governor, Defendant Lee is the chief executive officer of the State and is responsible for the faithful execution of Tennessee law, including the oversight and direction of executive branch agencies such as the TDCI.

73. At all relevant times, Defendant Jesse Gentry acted under the color of state law as the Chief Counsel of the TDCI, as the chief legal advisor to the Commissioner. As Chief Counsel, Defendant Gentry serves as the principal legal advisor to TDCI and its leadership on matters relating to the interpretation, implementation, and enforcement of the agency's statutes, regulations, and administrative orders.

74. At all relevant times, Defendant Bode acted under the color of state law as Executive Director, Detection Service Licensing Program. In this role, Defendant Bode is responsible for the administration and oversight of licensing and regulatory compliance for individuals and entities subject to the Detection Service Licensing Program.

75. Plaintiffs engaged in protected speech, as set forth in paragraphs 64-66.

76. The penalties imposed in the Final Order, including the revocation of Plaintiff Solaren's license, was an adverse action that was designed to, and would, deter a person from continuing to engage in such protected speech.

77. By taking these actions against Plaintiffs, Defendants sought to silence anyone else critical of Defendants and the TDCI.

78. There is a causal connection between Defendants' actions and the adverse action that was motivated at least in part by the Plaintiffs' protected conduct.

79. Defendants have committed First Amendment retaliation, in contravention of Plaintiffs' clearly established rights.

80. As a consequence of the foregoing, Plaintiffs have sustained financial and reputational harm, and Plaintiff Byrd has suffered personal injuries and damages cognizable under 42 U.S.C § 1983.

81. Plaintiffs further seek punitive damages against individual capacity Defendants, since the actions complained of were motivated by evil motive or intent, and/or involve reckless or callous indifference to the federally protected rights of Plaintiffs.

82. Plaintiffs demand judgment on these punitive damages against the individual capacity Defendants, in an amount to be determined at trial.

**COUNT II**
**42 U.S.C. § 1983 for Violation of Plaintiffs' Procedural and Substantive Due Process Rights**
**Lack of Notice and Opportunity to be Heard**

83. The preceding paragraphs are incorporated herein by reference.

84. The Fourteenth Amendment to the United States Constitution prohibits the deprivation of property without due process of law.

85. At all relevant times, Defendant Culberson acted under the color of state law as an official of the TDCI as the Commissioner's Designee on the Final Order. Defendant Culberson reviewed, decided, and/or prepared the Final Order. Additionally, in his official capacity, Defendant Culberson has responsibility for, or authority over, the enforcement and implementation of the Final Order and related regulatory actions.

86.     At all relevant times, Defendant Bass acted under the color of state law as an official of the TDCI as the Certifying Attorney on the Final Order. As the certifying attorney on the Final Order, Defendant Bass was responsible for reviewing the Final Order for accuracy and compliance. Additionally, in her official capacity, Defendant Bass has responsibility for, or authority over, the enforcement and implementation of the Final Order and related regulatory actions.

87.     At all relevant times, Defendant Lawrence acted under the color of state law as an official of the TDCI as the Commissioner of the TDCI with the power to oversee Commission investigations. Defendant Lawrence is the chief executive officer of TDCI and is responsible for the administration, oversight, and enforcement of the agency's laws, regulations, and orders, including those relating to licensing, discipline, and regulatory compliance.

88.     At all relevant times, Defendant Lee acted under the color of state law as a Governor of Tennessee and with appointment power of the Commissioner. As Governor, Defendant Lee is the chief executive officer of the State and is responsible for the faithful execution of Tennessee law, including the oversight and direction of executive branch agencies such as the TDCI.

89.     At all relevant times, Defendant Jesse Gentry acted under the color of state law as the Chief Counsel of the TDCI, as the chief legal advisor to the Commissioner. As Chief Counsel, Defendant Gentry serves as the principal legal advisor to TDCI and its leadership on matters relating to the interpretation, implementation, and enforcement of the agency's statutes, regulations, and administrative orders.

90.     At all relevant times, Defendant Bode acted under the color of state law as Executive Director, Detection Service Licensing Program. In this role, Defendant Bode is responsible for the administration and oversight of licensing and regulatory compliance for individuals and entities subject to the Detection Service Licensing Program.

91. Plaintiff Solaren possessed and continues to possess a protected property interest in its license to operate as a contract security company and in the continued operation of its business.

92. Defendants deprived Plaintiff Solaren of that protected property interest by issuing the Final Order suspending Plaintiff's license and imposing enhanced sanctions in plain contravention of state law.

93. Plaintiff Solaren was deprived of that property interest when Defendants issued the Final Order suspending Plaintiff's license and imposing enhanced sanctions in plain contravention of state law, thereby interrupting ongoing business operations and causing damages exceeding $50,000,000.

94. Defendants' issuance of the Final Order, and the procedures employed in reaching that decision, were the direct and proximate cause of Plaintiff Solaren's injuries.

95. Suspension of Plaintiff Solaren's license deprives Plaintiff of the ability to operate its business, maintain contracts, preserve goodwill, and retain employees, contractors, and customers.

96. The Due Process Clause requires that laws, regulations, and agency interpretations provide fair notice of what conduct is required or prohibited before penalties may be imposed.

97. The Licensing Act does not require POST Certification for individuals to qualify for any of the Licensing Act Exemptions contained in the applicable 2024 version of Tenn. Code Ann. § 62-35-103.

98. In the absence of clear statutory or regulatory direction, Plaintiff Solaren reasonably interpreted the applicable provisions of the Licensing Act to conclude that DCSO personnel were exempt from the Licensing Act.

99. At no time prior to the issuance of the Initial Order was Plaintiff Solaren provided with advance notice that TDCI would, or could, interpret the statutory phrase "sworn peace officer" as requiring POST certification, particularly when the Licensing Act contains no reference to POST certification.

100. At all relevant times, neither the Licensing Act nor TDCI provided a clear, written rule or process by which security companies subject to the Licensing Act could determine whether an independent contractor or employee qualified as a sworn peace officer or a retired peace officer and thus was exempt from the Licensing Act.

101. Plaintiff Solaren and other industry participants repeatedly sought guidance and clarification regarding, but not limited to, permissible patches, police-identifying insignia, and peace officer exemptions.

102. Rather than promulgate rules and regulations to resolve these uncertainties, Defendants imposed severe penalties based on an interpretation of the Licensing Act that was not reasonably ascertainable from the text of Licensing Act and was in contravention of the plain language of the Licensing Act.

103. The penalties imposed against Plaintiff Solaren are substantial and severe, heightening the requirement that Defendants provide clear and ascertainable notice before imposing such sanctions.

104. Plaintiff Solaren was not given notice or a meaningful opportunity to be heard on the decisive grounds ultimately used to impose suspension, because TDCI imposed the sanction and penalties only after ignoring or refusing to recognize the plain language of the Licensing Act and the Licensing Act Exemptions.

105. Suspension of Plaintiff Solaren's license deprives Plaintiff Solaren of the ability to operate its business, maintain contracts, preserve goodwill, and retain employees, contractors, and customers.

106. By imposing suspension and enhanced sanctions based on this interpretation, Defendants deprived Plaintiff Solaren of substantive and procedural due process in violation of the Fourteenth Amendment.

107. Pursuant to 42 U.S.C. § 1983, Plaintiff Solaren is entitled to recover the damages caused by these violations.

108. The foregoing activities were in contravention of clearly established law, subjecting the individual capacity Defendants to claims for damages.

109. Further, pursuant to 42 U.S.C. § 1988, Plaintiff Solaren is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

110. Plaintiff Solaren further seeks punitive damages against individual capacity Defendants, since the actions complained of were motivated by evil motive or intent, and/or involve reckless or callous indifference to the federally protected rights of Plaintiff Solaren. Plaintiff Solaren demands judgment on these punitive damages against the individual capacity Defendants, in an amount to be determined at trial.

**COUNT III**
**42 U.S.C. § 1983 for Excessive Fines (Eighth Amendment, incorporated by the Fourteenth Amendment) – Gross Disproportionality**

111. The preceding paragraphs are incorporated herein by reference.

112. The Fourteenth Amendment to the United States Constitution prohibits deprivation of property without due process of law.

113. At all relevant times, Defendant Culberson acted under the color of state law as

110558248v19

an official of the TDCI as the Commissioner's Designee on the Final Order. Defendant Culberson reviewed, decided, and/or prepared the Final Order. Additionally, in his official capacity, Defendant Culberson has responsibility for, or authority over, the enforcement and implementation of the Final Order and related regulatory actions.

114.    At all relevant times, Defendant Bass acted under the color of state law as an official of the TDCI as the Certifying Attorney on the Final Order. As the certifying attorney on the Final Order, Defendant Bass was responsible for reviewing the Final Order for accuracy and compliance. Additionally, in her official capacity, Defendant Bass has responsibility for, or authority over, the enforcement and implementation of the Final Order and related regulatory actions.

115.    At all relevant times, Defendant Lawrence acted under the color of state law as an official of the TDCI as the Commissioner of the TDCI with the power to oversee Commission investigations. Defendant Lawrence is the chief executive officer of TDCI and is responsible for the administration, oversight, and enforcement of the agency's laws, regulations, and orders, including those relating to licensing, discipline, and regulatory compliance.

116.    At all relevant times, Defendant Lee acted under the color of state law as a Governor of Tennessee and with appointment power of the Commissioner. As Governor, Defendant Lee is the chief executive officer of the State and is responsible for the faithful execution of Tennessee law, including the oversight and direction of executive branch agencies such as the TDCI.

117.    At all relevant times, Defendant Jesse Gentry acted under the color of state law as the Chief Counsel of the TDCI, as the chief legal advisor to the Commissioner. As Chief Counsel, Defendant Gentry serves as the principal legal advisor to TDCI and its leadership on matters relating to the interpretation, implementation, and enforcement of the agency's statutes, regulations, and administrative orders.

118. At all relevant times, Defendant Bode acted under the color of state law as Executive Director, Detection Service Licensing Program. In this role, Defendant Bode is responsible for the administration and oversight of licensing and regulatory compliance for individuals and entities subject to the Detection Service Licensing Program.

119. The Eighth Amendment's Excessive Fines Clause limits the government's power to impose monetary or in-kind sanctions that are punitive in nature.

120. The sanctions imposed here, including suspension and the resulting severe economic consequences, were punitive in effect and inflicted consequences far beyond ordinary regulatory administration, including disruption of business operations, harm to goodwill and client relationships, and losses exceeding $50,000,000.

121. The sanctions were grossly disproportionate in light of the record, including that the agency proved only a portion of the alleged counts and that Plaintiff Solaren undertook extensive corrective measures to ensure future compliance.

122. Defendant Culberson's unexplained departure from Judge Padfield's mitigation findings and imposition of enhanced sanctions without addressing undisputed remediation evidence further demonstrates that the penalty was punitive and disproportionate.

123. The constitutionally deficient process by which the sanction was imposed further underscores the punitive and excessive nature of the penalty.

124. By imposing sanctions that were punitive and grossly disproportionate to the proven regulatory violations, Defendants violated Plaintiff's rights under the Excessive Fines Clause.

125. Pursuant to 42 U.S.C. § 1983, Plaintiff Solaren is entitled to recover the damages caused by this violation.

126. The foregoing activities were in contravention of established law, subjecting the individual capacity Defendants to claims for damages.

127. Further, pursuant to 42 U.S.C. § 1988, Plaintiff Solaren is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

128. Plaintiff Solaren further seeks punitive damages against individual capacity Defendants, since the actions complained of were motivated by evil motive or intent, and/or involve reckless or callous indifference to the federally protected rights of Plaintiff Solaren. Plaintiff Solaren demands judgment on these punitive damages against the individual capacity Defendants, in an amount to be determined at trial.

## COUNT IV
### 42 U.S.C. § 1983 for Equal Protection - Class of One

129. The preceding paragraphs are incorporated herein by reference.

130. At all relevant times, Defendant Culberson acted under the color of state law as an official of the TDCI as the Commissioner's Designee on the Final Order. Defendant Culberson reviewed, decided, and/or prepared the Final Order. Additionally, in his official capacity, Defendant Culberson has responsibility for, or authority over, the enforcement and implementation of the Final Order and related regulatory actions.

131. At all relevant times, Defendant Bass acted under the color of state law as an official of the TDCI as the Certifying Attorney on the Final Order. As the certifying attorney on the Final Order, Defendant Bass was responsible for reviewing the Final Order for accuracy and compliance. Additionally, in her official capacity, Defendant Bass has responsibility for, or authority over, the enforcement and implementation of the Final Order and related regulatory actions.

132. At all relevant times, Defendant Lawrence acted under the color of state law as an

official of the TDCI as the Commissioner of the TDCI with the power to oversee Commission investigations. Defendant Lawrence is the chief executive officer of TDCI and is responsible for the administration, oversight, and enforcement of the agency's laws, regulations, and orders, including those relating to licensing, discipline, and regulatory compliance.

133. At all relevant times, Defendant Lee acted under the color of state law as a Governor of Tennessee and with appointment power of the Commissioner. As Governor, Defendant Lee is the chief executive officer of the State and is responsible for the faithful execution of Tennessee law, including the oversight and direction of executive branch agencies such as the TDCI.

134. At all relevant times, Defendant Jesse Gentry acted under the color of state law as the Chief Counsel of the TDCI, as the chief legal advisor to the Commissioner. As Chief Counsel, Defendant Gentry serves as the principal legal advisor to TDCI and its leadership on matters relating to the interpretation, implementation, and enforcement of the agency's statutes, regulations, and administrative orders.

135. At all relevant times, Defendant Bode acted under the color of state law as Executive Director, Detection Service Licensing Program. In this role, Defendant Bode is responsible for the administration and oversight of licensing and regulatory compliance for individuals and entities subject to the Detection Service Licensing Program.

136. Plaintiff Solaren was intentionally treated differently from similarly situated licensees, companies, and prior enforcement matters without a rational basis.

137. Comparable or potentially comparable companies who engaged in the same conduct as Solaren include, but are not limited to, Apex Security Group, Inc., Crowe Overwatch Security, and Nashville Blueline Security, LLC (collectively, the "Comparable Parties").

138. Upon information and belief, the Comparable Parties were licensed by TDCI

under the same statutory and regulatory framework applicable to Plaintiff Solaren and engaged in substantially similar business activities involving the utilization and identification of DCSO personnel and other peace officers as well as interpretation of the same or substantially similar provisions of the Licensing Act.

139. Upon information and belief, TDCI was aware, or reasonably should have been aware, of the Comparable Parties' use and identification of DCSO personnel and other peace officers as well as the interpretation of the Licensing Act through licensing submissions, regulatory oversight, complaints, inspections, communications, investigations, and/or other agency interactions as they were cited in the technical record at Solaren's hearing on the Petition.

140. Upon information and belief, despite engaging in conduct that was materially similar to or indistinguishable from the conduct attributed to Plaintiff Solaren, the Comparable Parties were not subjected to license revocation, suspension, comparable disciplinary proceedings, or other materially adverse enforcement actions.

141. Defendants' differential treatment was motivated by Plaintiffs' protected speech, media coverage and pressure, and/or arbitrary enforcement rather than a legitimate neutral enforcement policy.

142. Defendants' selective enforcement violated Plaintiff Solaren's rights as a class of one under the Equal Protection Clause of the Fourteenth Amendment.

143. Pursuant to 42 U.S.C. § 1983, Plaintiff Solaren is entitled to recover the damages caused by this violation.

144. Further, pursuant to 42 U.S.C. § 1988, Plaintiff Solaren is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

145. Plaintiff Solaren further seeks punitive damages against individual capacity

Defendants, since the actions complained of were motivated by evil motive or intent, and/or involve reckless or callous indifference to the federally protected rights of Plaintiff Solaren. Plaintiff Solaren demands judgment on these punitive damages against the individual capacity Defendants, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

i.  A determination that the Final Order was issued in violation of Tennessee law;

ii.  Injunctive relief restoring Plaintiff Solaren's license and enjoining further enforcement and penalties of the Final Order;

iii.  Judgment against Defendants, including both compensatory and punitive damages, in an amount to be proven at trial;

iv.  Judgment against Defendants for Plaintiffs' costs and expenses, including attorneys' fees, incurred in bringing this action under 42 U.S.C. § 1988;

v.  Pre- and post-judgment interest on all compensation and damages awarded Plaintiffs;

vi.  All other and further relief, in law or at equity, to which Plaintiffs may be entitled; and

vii.    Trial by jury on all issues so triable.

Dated: July 16, 2026

Respectfully submitted,


*/s/ Heather Wright*
Heather Wright (TN Bar No. 030649)
Allison J. Bojczuk (TN Bar No. 042440)
**BUCHALTER LLP**
1 Music Circle South, Suite 300
Nashville, TN 37203
T: 615.986.3718
hwright@buchalter.com
abojczuk@buchalter.com
*Attorneys for Plaintiffs*